**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
KEVIN BARRY,                            )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )   Civil Action No. 04-168 (RBW)
                                        )
UNITED STATES CAPITOL GUIDE BOARD,)
                                        )
            Defendant.                  )
_____)

**MEMORANDUM OPINION**

        Plaintiff Kevin Barry brings this action against his former employer, the United States

Capitol Guide Board ("Board"),[1] alleging, pursuant to the Congressional Accountability Act of

1995, 2 U.S.C. § 1302 (2000),[2] that the Board unlawfully terminated his employment with the

United States Capitol Guide Service ("Service") in 2003 in retaliation for the statutorily

protected activity he initiated against his employer in 1996.  Amended Civil Complaint for

Equitable and Monetary Relief and Demand for Jury ("Am. Compl.") ¶¶ 74-81.  This matter is

_____

[1]      While the plaintiff originally named two defendants in his complaint, the United States Capitol
Guide Service ("Service") and the United States Capitol Guide Board ("Board"), Amended Civil
Complaint for Equitable and Monetary Relief and Demand for Jury ("Am. Compl.") ¶¶ 1-2, 5-6, the
plaintiff has voluntarily dismissed his claims against the Service, Plaintiff's Notice of Voluntary
Dismissal of Defendant Capitol Guide Service Without Prejudice; see also Answer to Amended
Complaint ("Answer") ¶ 1, which is "subject to the direction, supervision and control" of the Board,
including termination decisions regarding employees, Plaintiff's Memorandum of Points and Authorities
in Opposition to Defendant's Motion for Summary Judgment and Request for Oral Argument at 6.

[2]      Although the plaintiff also invokes the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, 794 (2000),
and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111 (2000), in his complaint, Am.
Compl. ¶¶ 75-78, because the record before the Court contains no indication that the plaintiff, who is
hearing impaired, was terminated due to any disability, the Court will construe the plaintiff's claim as
being brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-3(a), 16(a) (2000),
which is applicable to the Board through the Congressional Accountability Act of 1995, 2 U.S.C. §
1302(a)(2), and which is also invoked by the plaintiff, see Am. Compl. ¶ 81.

currently before the Court on the Board's motion for summary judgment,[3] which the plaintiff

opposes.[4]   Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's

Motion for Summary Judgment and Request for Oral Argument ("Pl.'s Opp'n").

## I.  BACKGROUND

The facts in the light most favorable to the plaintiff are as follows.[5]

The plaintiff commenced his employment with the Service on June 1, 1994.  Pl.'s Opp'n

at 6.  After approximately two years with the Service, in March 1996, the plaintiff applied for a

promotion to the position of Chief Guide, but he was not selected for the position.  Pl.'s Opp'n at

6.  As a result of his non-selection, the plaintiff filed an administrative complaint with the Office

of Compliance pursuant to § 402(a) of the Congressional Accountability Act of 1995, alleging

---

[3]     Due to a computer oversight, the filing of this 2006 motion was only recently brought to this Court's attention.  The Court regrets any inconvenience the parties have experienced as a result of the delay in resolving this motion.

[4]     The Court considered the following papers in conjunction with this motion: Defendant's Motion for Summary Judgment ("Def.'s Mot."); Defendant's Statement of Points and Authorities in Support of Its Motion for Summary Judgment ("Def.'s Mem."); Defendant's Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment ("Def.'s Stmt."); Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment and Request for Oral Argument ("Pl.'s Opp'n"); Plaintiff's Statement of Material Facts in Dispute ("Pl.'s Stmt."); and Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Def.'s Reply").

[5]     Only a limited number of facts in this case are actually disputed by the parties, as the plaintiff agrees with most of the facts set forth in the defendant's statement of undisputed material facts, see Pl.'s Opp'n at 6 n.3; compare Def.'s Stmt., with Pl.'s Stmt. at 3, and, accordingly, the Court will rely upon those representations.
        To the extent that the plaintiff's statement of materials facts in dispute indicates that disputes between the parties exist, the core of those facts identified by the plaintiff surround the issue of whether a breach of the 1997 settlement agreement between the parties agreement occurred.  See Pl.'s Stmt. at 2-3.  As the Court explains below, that issue is inconsequential to the resolution of the defendant's motion for summary judgment.  The additional disputed facts identified by the plaintiff that are unrelated to the 1997 settlement agreement consist of legal conclusions, uncontroverted or immaterial facts, and the ultimate question in the case, i.e., whether the Board's decision was in response to the plaintiff's participation in statutorily protected activity against the Board.  Id.  As Federal Rule of Civil Procedure 56(c) indicates, disputes of this type do not warrant a trial on the merits.

that his non-selection was the result of the Service's unlawful discrimination against him because he is hearing-impaired.  Pl.'s Opp'n at 6.  The administrative complaint was eventually dismissed after the plaintiff abandoned prosecution, id. at 6-7, but not before the Board conducted interviews with the plaintiff's co-workers regarding his job performance, which the plaintiff himself initiated, Def.'s Stmt. ¶¶ 18-19.

In the interviews, the Board learned for the first time of informal allegations by the plaintiff's co-workers asserting that the plaintiff was engaging in inappropriate behavior.  Id. ¶ 19.  On June 19, 1996, on the basis of the information obtained from those interviews, the Board provided the plaintiff with a disciplinary memorandum "'setting forth allegations of sexual harassment, gender discrimination and retaliation.'"  Pl.'s Opp'n at 7; see Def.'s Stmt., Declaration of Toby R. Hyman ("Hyman Decl."), Ex. K (June 19, 1996 Memorandum Regarding "Serious Misconduct").  The memorandum indicated that the interviews had been conducted in connection with the plaintiff's March 1996 complaint against his employer.  Def.'s Stmt., Hyman Decl., Ex. K (June 19, 1996 Memorandum Regarding "Serious Misconduct") at 1.

Four months later, in October 1996, the plaintiff requested mediation with his employer, alleging that the June 1996 disciplinary memorandum was prepared in retaliation for his March 1996 complaint.  Pl.'s Opp'n at 7.  While there is no indication concerning the success of any mediation that occurred, see Def.'s Stmt. ¶¶ 22-23, the plaintiff filed a formal complaint of retaliation against his employer with the Office of Compliance in March 1997, Pl.'s Stmt., Ex. 1 (1997 Settlement Agreement) § 1.7.

On July 23, 1997, the plaintiff and the Board executed a settlement agreement that, for unexplained reasons, referred to both of the plaintiff's previous complaints, Pl.'s Opp'n at 7; see

also Pl.'s Stmt., Ex. 1 (1997 Settlement Agreement) § 2.5, although the plaintiff had previously abandoned the prosecution of his March 1996 complaint, Pl.'s Opp'n at 6-7.  The 1997 settlement agreement stated that the Board could retain the 1996 disciplinary memorandum addressing "'allegations of sexual harassment, gender discrimination or retaliation,'" but could not maintain it in the plaintiff's personnel file "'until and unless [the defendant] receive[d] any additional accusation of sexual harassment, gender discrimination or retaliation against [the plaintiff],'" which were "'verified by a good faith investigation.'"   Pl.'s Opp'n at 7-8; see also Pl.'s Stmt., Ex. 1 (1997 Settlement Agreement) § 2.5.  In the event an "additional accusation of sexual harassment, gender discrimination or retaliation against [the plaintiff]" was made, the 1997 settlement agreement provided that the Board could then file the 1996 disciplinary memorandum in the plaintiff's personnel file, along with any opposition statement the plaintiff submitted in response to those allegations.  Pl.'s Opp'n at 7-8; see also Pl.'s Stmt., Ex. 1 (1997 Settlement Agreement) § 2.5.  The plaintiff never submitted any opposition statement to the 1996 disciplinary memorandum.  Def.'s Stmt. ¶ 26.

By early July 8, 2003, roughly six years after the plaintiff filed his second complaint against the Service and the parties entered into the 1997 settlement agreement, the plaintiff received a memorandum written by Thomas L. Stevens, Director of Visitor Services, recommending the plaintiff's termination from his position as Assistant Director in Charge of Administration.  Pl.'s Stmt., Ex. 5 (Stevens' Recommendation for Termination of Employment ("Stevens' Recommendation")) at 1.  The memorandum indicated that "[a]fter a thorough investigation and careful consideration" of several incidents related to the plaintiff's contact with "a contract interpreter seeking a permanent position with [a division of] . . . the Guide Service,"

Stevens would "recommend to the Capitol Guide Board that the [plaintiff's] employment . . . be terminated."  Pl.'s Stmt., Ex. 5 (Stevens' Recommendation) at 1.  According to Stevens' memorandum, those incidents included "inappropriate conduct" consisting of: (1) "question[ing] [the contractor] about her ethnic background;" (2) "ma[king] stereotypic and insulting comments about minorities;" (3) "question[ing] [the contractor] about her sexual orientation;" (4) "comment[ing] about the sexual orientation of other [division] employees;" (5) "undercut[ing] the best interests of the Guide Service" by recommending to the contractor that she seek employment elsewhere; and (6) "disclos[ing] confidential information about other employees['] [work performance] to [the contractor]."  Pl.'s Stmt., Ex. 4 (Stevens' Memorandum to Kevin Barry Regarding Recommendation for Termination of Employment ("Stevens' Memorandum")). Specifically, Stevens reported that the plaintiff "asked [the contractor] whether she is gay or straight and . . . commented that one might have to be gay to work in [his division of the Service];" made racially insensitive remarks about Hispanics after learning the contractor was Hispanic; "tr[ied] to convince [the contractor] not to take the job [with the Service], if offered;" "made various negative comments . . . concerning the performance of guides [who reported to him];" and failed to report alleged comments up the chain that might have had a bearing on a personnel hiring decision as required by his employer.  Pl.'s Stmt., Ex. 5 (Stevens' Recommendation) at 1-2.

Stevens' memorandum further indicated that he had arrived as his recommendation after interviewing both the contractor and the plaintiff.  Id. at 1.  It was Stevens' view that the contractor seemed "very credible" in conveying her allegations against the plaintiff and provided "internally consistent" statements to him.  Id.  On the other hand, Stevens assessed that the

plaintiff was not credible based upon his odd reactions and "internally inconsistent" statements about the contractor's allegations.  Id.  Stevens concluded that the plaintiff had engaged in behavior that violated office policy and was inconsistent with the training that the plaintiff had received.  Pl.'s Stmt., Ex. 4 (Stevens' Memorandum).  Stevens instructed the plaintiff to take "leave, with pay[] pending the decision of the Board" as to whether Stevens' recommendation to terminate the plaintiff would be approved.  Id.

On July 16, 2003, the Board's three members, William H. Pickle, Wilson Livingood, and Alan M. Hantman, unanimously upheld Stevens' recommendation "to terminate [the plaintiff's] employment for displaying a lack of good judgment and for engaging in inappropriate conduct." Pl.'s Stmt., Ex. 3 (Termination of Employment Letter).  One of the three members of the Board members, Wilson Livingood, indicated that the Board relied upon Stevens' investigation and recommendation as the only analysis of the contractor's allegations, believing that Stevens had made a "good faith investigation" based upon his "every confidence in Mr. Stevens's abilities and professionalism."  Pl.'s Stmt., Ex. 2 (February 24, 2006 Deposition of Wilson S. Livingood ("Livingood Depo.")) at 146-47; see also Def.'s Stmt., Declaration of Alan Hantman ("Hantman Decl.") ¶¶ 3-5; id. at Declaration of William H. Pickle ("Pickle Decl.") ¶¶ 4-6.  Livingood, who was a signatory to the 1996 disciplinary memorandum the Board issued to the plaintiff, also indicated that during the Board members' discussion as whether to approve Stevens' termination recommendation he informed the other two Board members about the fact that the plaintiff had been reported to have engaged in inappropriate behavior in 1996, i.e., the underlying facts of the 1996 disciplinary memorandum.  Pl.'s Stmt., Ex. 2 (Livingood Depo.) at 135; Pl.'s Opp'n at 11. Livingood noted, however, that the 1996 allegations against the plaintiff were "a small factor" in

his decision to approve Stevens' recommendation to terminate the plaintiff's employment.  Pl.'s

Stmt., Ex. 2 (Livingood Depo.) at 135; see also Pl.'s Opp'n at 11.

Despite disclosing this information to the two other Board members, Livingood insists

that he did not provide the Board members with a copy of the memorandum or convey that the

plaintiff filed any complaint of discrimination against his employer in connection to the issuance

of the memorandum.  Pl.'s Stmt., Ex. 2 (Livingood Depo.) at 137, 206-08.  Since rendering their

termination decision, the Board members have provided sworn statements indicating that they

would have decided to terminate the plaintiff's employment based solely on the content of

Stevens' memorandum regardless of the 1996 allegations.  Defs.' Stmt. ¶ 134; id. at Declaration

of Wilson Livingood ("Livingood Decl.") ¶¶ 8-9; id. at Hantman Decl. ¶¶ 6-7; id. at Pickle Decl.

¶¶ 7-8.

The plaintiff commenced this action challenging the Board's decision to terminate his

employment on the ground that it amounted to unlawful retaliation in response to the challenges

he initiated in 1996 and pursued until the 1997 settlement agreement was reached.

## II.  STANDARD OF REVIEW

To grant a motion for summary judgment under Rule 56(c), this Court must find that "the

pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c).  When ruling on a motion for summary judgment, the Court must

view the evidence in the light most favorable to the non-moving party.  Bayer v. U.S. Dep't of

Treasury, 956 F.2d 330, 333 (D.C. Cir. 1992).  However, the non-moving party cannot rely on

"mere allegations or denials . . . , but . . . must set forth specific facts showing that there [are]

genuine issue[s] for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citation

and internal quotations omitted).  In addition, the non-moving party cannot rely upon

inadmissible evidence to survive summary judgment; rather, the "non-moving party must

'produce evidence . . . capable of being converted into admissible evidence.'" Greer v. Paulson,

505 F.3d 1306, 1315 (D.C. Cir. 2007) (citation and internal quotations omitted).  Under Rule

56(c), if a party fails to "establish the existence of an element essential to that party's case, and

on which that party will bear the burden of proof at trial," summary judgment is warranted.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  However, the party moving for summary

judgment bears the burden of establishing the absence of evidence that supports the non-moving

party's case.  Id. at 322-23.

### III. LEGAL ANALYSIS

The Board argues that it is entitled to summary judgment (1) because the plaintiff cannot

meet his burden to establish a prima facie case as required by McDonnell Douglas Corp. v.

Green, 411 U.S. 792 (1973), based upon the evidence in the record, and (2) because he is unable

to establish causal connection between his grievance activity that occurred throughout 1996 and

1997 and his termination in 2003.  Def.'s Mem. at 9-10.  In the absence of direct evidence of

retaliation, the plaintiff must establish his claim of retaliation with circumstantial evidence,

which is evaluated under the McDonnell Douglas burden-shifting test.  Vickers v. Powell, 493

F.3d 186, 194 (D.C. Cir. 2007) (citing McDonnell Douglas, 411 U.S. 792).  Under this test, the

plaintiff must first establish a prima facie case of illegal retaliation by "show[ing] that '(1) []he

engaged in statutorily protected activity; (2) h[is] employer took an adverse personnel action

against h[im]; and (3) a causal connection exists between the two [events].'" Vickers, 493 F.3d

at 195 (quoting <u>Carney v. Am. Univ.</u>, 151 F.3d 1090, 1095 (D.C. Cir. 1998)). The burden then

shifts to his employer to proffer "'some legitimate, nondiscriminatory [<u>i.e.</u>, non-retaliatory]

reason' for its actions." <u>Id.</u> at 195 (quoting <u>McDonnell Douglas</u>, 411 U.S. at 802). Upon the

presentation of such an explanation by the employer, the <u>McDonnell Douglas</u> framework falls

away and the issue is reduced to retaliation <u>vel non</u>; in other words, the question becomes

whether the plaintiff has established that it is more likely than not that the employer's proffered

reason "is [a] mere pretext and thus a 'coverup'" for the employer's true retaliatory motive. <u>Id.</u> at

195 (citing <u>McDonnell Douglas</u>, 411 U.S. at 805); <u>see also</u> <u>Jones v. Bernanke</u>, 557 F.3d 670,

678-79 (D.C. Cir. 2009); <u>Weber v. Battista</u>, 494 F.3d 179, 186 (D.C. Cir. 2007) ("In order to

prove [that] the [employer's] explanations for [its] alleged acts of . . . retaliation are pretextual,

[the plaintiff] must show '<u>both</u> that the reason [the employer provided] was false, <u>and</u> that . . .

[retaliation] was the real reason [for the employer's decision].'") (citation omitted). Of course,

the showing of pretext is required regardless of whether the plaintiff attempts to meet his burden

through the use of direct or indirect evidence. <u>See</u> <u>Bernanke</u>, 557 F.3d at 678 (noting that "a

material dispute on the ultimate issue of retaliation [may be shown] 'either directly by

[demonstrating] that a discriminatory reason more likely motivated the employer or indirectly by

showing that the employer's proffered explanation is unworthy of credence'") (citation omitted);

<u>Keeley v. Small</u>, 391 F. Supp. 2d 30, 39 (D.D.C. 2005) (noting that after the <u>McDonnell Douglas</u>

framework disappears, "the question is whether [the employer's] proffered reason is a pretext for

retaliation," and to this question a Court must probe "all the relevant circumstances in evidence,

including the strength of the prima facie case, [and] any direct evidence of retaliation . . . "). In

addition to its argument that the plaintiff has not satisfied the <u>prima facie</u> case requirement, the

Board also contends that the plaintiff has not offered any evidence to challenge the Board's proffered legitimate, non-discriminatory rationale for terminating his employment.  Def.'s Mem. at 40.

The plaintiff opposes summary judgment on the ground that the acts about which he complains – the Board's consideration of the 1996 disciplinary memorandum in 2003 breached the 1997 settlement agreement – establishes his claim by direct evidence, abdicates the need for any application of the <u>McDonnell Douglas</u> framework, and entitles him to present his case to a jury.[6]  Pl.'s Opp'n at 14-16.  The plaintiff therefore does not address the Board's <u>prima facie</u> deficiency argument in his opposition.  <u>Id.</u> at 15-16.  Moreover, the plaintiff does not provide any evidence to rebut the Board's proffered legitimate, non-retaliatory rationale for terminating his employment.  <u>Id.</u>

For the following reasons, the Court must grant the Board's motion and award summary judgment to the Board.  First, contrary to the plaintiff's contention, any breach of the 1997 settlement is not indicative of retaliation.  Second, the 1996 disciplinary memorandum does not amount to statutorily protected activity.  And, third, the plaintiff has not provided sufficient direct or indirect evidence that retaliation was more likely than not to have occurred as would be needed to meet his burden and prevail at trial.

---

[6]     In maintaining his position that he need not satisfy the elements necessary to establish a <u>prima facie</u> case of retaliation, Pl.'s Opp'n at 8 n.6, the plaintiff has abandoned what appeared to be his earlier position that interim events, which occurred between the 1997 settlement agreement and the termination of his employment in 2003, supported a finding of continued retaliation, satisfying any need to establish further causation, Am. Compl. ¶¶ 30-55.

**A.      The Plaintiff Has Not Provided Any Direct Evidence of Retaliation**

"Title VII's anti-retaliation provision makes it unlawful for an employer 'to discriminate against [an] employee [ ] . . . <u>because</u> [the employee] has opposed any practice' made unlawful by Title VII or 'has made a charge, testified, assisted, or participated in' a Title VII proceeding." <u>Steele v. Schafer</u>, 535 F.3d 689, 695 (D.C. Cir. 2008) (emphasis added and omitted from original) (quoting 42 U.S.C. § 2000e-3(a)).  In the plaintiff's opposition filing, he sets forth two theories of where the record contains direct evidence of retaliation: evidence that the Board breached the 1997 settlement agreement, Pl.'s Opp'n at 13, and that Wilson Livingood considered the 1996 disciplinary memorandum in assessing whether the plaintiff's employment should be terminated, <u>id.</u> at 17.[7]  For the following reasons, none of this evidence amounts to direct evidence of retaliation or retaliatory motive.

**1.      The Alleged Breach of the 1997 Settlement Agreement is Not Direct Proof of Retaliation or Retaliatory Motive**

The plaintiff maintains that the Board's alleged breach of the 1997 settlement agreement amounts to direct proof of retaliatory motive.  Pl.'s Opp'n at 13.  However, as the Board correctly points out, the agreement neither contained an anti-retaliation clause nor forbade the Board from considering the underlying facts of the memorandum.  Def.'s Reply at 4-5.  Instead, the agreement merely required that any response to the memorandum (and no response was ever provided by the plaintiff) be considered by the employer in the event there was any future consideration of the memorandum by the employer.  <u>Id.</u>

---

[7]      While the plaintiff advances his argument that he has established retaliation by direct evidence, he never actually identifies the evidence that qualifies as direct evidence. Pl.'s Opp'n at 15-16. Accordingly, the Court must assume in viewing the facts in the light most favorably to the plaintiff that it is the plaintiff's position that both of these theories of retaliation are supported by direct evidence.

Moreover, regardless of whether the 1997 settlement agreement was breached, proof of the alleged breach sheds no light on the mindset of the Board members, cf. Harvey v. Merit Sys. Prot. Bd., 802 F.2d 537, 550 (D.C. Cir. 1986) (construing a retaliation claim under the Civil Service Review Act ("CSRA"), 5 U.S.C. §§ 1201-06, 2101a, 2301-05, 3111-12, 3131-36, 3327, 3391-97, 3591-94, 3596, 4311-15, 4507, 4701-06, 5361-66, 5381-85, 5752, 7101-06, 7111-23, 7131-35, 7211, 7501-04, 7511-14, 7521, 7541-43, 7702, 7703 (2006), and finding that "it is of no consequence in [the] disciplinary proceeding whether or not [the employer] was correct in his assessment of [the employee's] activities because even if [the employer] was wrong, improper [retaliatory] motivation was still lacking"), especially considering that no evidence is before the Court that two of the three Board members were aware that any disciplinary memorandum existed memorializing the event, any grievance activity arose out of the disciplinary memorandum or that it resulted in a settlement agreement, Def.'s Stmt., Hantman Decl. ¶ 8; id. at Pickle Decl. ¶ 8.  In other words, whether the Board members approved the plaintiff's termination in retaliation for his grievance activity against his employer in 1996 and 1997 cannot be assessed by simply showing that the Board considered disciplinary information that the plaintiff maintains it was forbidden from considering.  The ability to reasonably make that assessment is obscured by the fact that the Board also had before it recent disciplinary allegations, which clearly supported its termination decision.

The cases cited by the plaintiff for the proposition that the Court is obligated to consider any breach of the 1997 settlement agreement as evidence of retaliation are not to the contrary. See Pl.'s Opp'n at 14.  Those cases either involve instances where the employer was alleged to have breached an actual anti-retaliation agreement, see, e.g., Keaton v. Lucent Techs., Inc., No.

C2-03-890, 2005 WL 1396941 at *5-6 (S.D. Ohio June 13, 2005) (considering the plaintiff's breach of contract claim independently from his Title VII claim, but noting that the claims are interrelated insofar as the plaintiff would have to prove retaliation under Title VII to establish a breach of the agreement), which is distinguishable from the 1997 settlement agreement because it contains no anti-retaliation clause, or are otherwise not instructive, see, e.g., Lowery v. Fed. Express Corp., 426 F.3d 817, 820 (6th Cir. 2007) (merely referencing that the district court "elect[ed] to exercise [jurisdiction] over the state law [breach of the anti-retaliation agreement] cause of action"); Hanson v. First Student, Inc., 2002 WL 1402537 at *2 (D. Minn. June 28, 2002) (finding that because the plaintiff's claim for breach of the settlement agreement was sufficiently related to his claim for retaliation the district court could assume jurisdiction over both claims).

Accordingly, evidence of the alleged breach of the settlement agreement is not direct proof of retaliation by the plaintiff's prior employer, and any question of fact raised by the alleged breach of the agreement is immaterial to the issue of retaliation vel non.

### 2. Livingood's Consideration of the 1996 Disciplinary Memorandum is Not Direct Evidence of Retaliation or Retaliatory Motive

The plaintiff appears to essentially assume that the 1996 disciplinary memorandum is protected activity, and that Livingood's consideration of it creates an actionable claim of retaliation.[8]  However, it is difficult to imagine, and indeed the plaintiff has not adequately

---

[8]      Viewing the facts in the light most favorable to the plaintiff, the Court infers that Livingood knew of the plaintiff's protected activity, as he was a signatory to the 1996 disciplinary memorandum, which referenced the plaintiff's March 1996 grievance.  However, the plaintiff has pointed to no evidence where the two other Board members were aware of this information, or that Livingood relied upon the memorandum (separate from the most recent allegations of misconduct) in making his decision favoring termination of the plaintiff's employment.

explained, how Livingood's consideration of a memorandum <u>authored by the Board</u> and his complaining about the plaintiff's behavior could under any circumstances be viewed as <u>the plaintiff</u> "'oppos[ing] any practice' . . . or . . . 'ma[king] a charge, testify[ing], assist[ing], or participat[ing] in' a Title VII proceeding." <u>Steele</u>, 535 F.3d at 695 (citation omitted); <u>accord</u> <u>Crawford v. Metro. Gov't of Nashville & Davidson County, Tenn.</u>, __ U.S. __, ___ 129 S. Ct. 846, 850 (2009) ("The term 'oppose,' being left undefined by the [Title VII] statute, carries its ordinary meaning: 'to resist or antagonize . . . ; to contend against; to confront; resist; withstand.'" (internal citation omitted)).  To the contrary, the 1996 disciplinary memorandum is the alleged act of retaliation itself and the basis for the plaintiff's subsequent grievance activity.[9]  <u>Compare</u> <u>Broderick v. Donaldson</u>, 437 F.3d 1226, 1232 (D.C. Cir. 2006) (indicating the possibility that a memorandum written <u>by the plaintiff</u> could constitute "a charge" against her employer and amount to a "protected activity" if it alleged discrimination or retaliation), <u>and</u> <u>Crawford</u>, __ U.S. at __, 129 S. Ct. at 852-53 (finding that employee participated in protected activity when <u>the employee</u> "reported discrimination in response to the enquiries . . . [of her] employer"), <u>with</u> <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001) (refusing to find that <u>the employer's</u> "issuance of a right-to-sue letter" amounted to statutorily protected activity because "the employee [took] no part" in its issuance).  In any event, even though the Court cannot find that the 1996 disciplinary memorandum itself amounted to protected activity under Title VII, it will nonetheless consider whether Livingood's knowledge of the plaintiff's grievance activity improperly tainted the Board's decision to terminate the plaintiff's employment.

---

[9]     The plaintiff had the opportunity to respond to the 1996 disciplinary memorandum, an act which would likely have been construed as protected activity, but he opted not to do so.  Def.'s Stmt. ¶ 26.

3.    **Livingood's Consideration of His Independent Knowledge of the Plaintiff's Grievance Activity is Not Direct Evidence of Retaliation or Retaliatory Motive**

The fault in the plaintiff's position that he has established retaliation by direct evidence lies in his failure to distinguish between, on the one hand, demonstrating that Livingood considered the knowledge he had concerning the plaintiff's grievance activity, and on the other hand, showing that he made his decision based on that activity.  Cf. Harvey, 802 F.2d at 549-50 (evaluating the record and finding no evidence that the employer's conduct "was motivated by personal spite or 'to get even [with the plaintiff],'" or "[was] motivated by a desire to either punish [the plaintiff] for exercising or deterring him from exercising his . . . right[]" to participate in statutorily protected activity).  Mere knowledge by one member of the Board, i.e., Livingood's knowledge, is not enough to demonstrate that the Board undertook its action for retaliatory reasons.[10]  See Carpenter v. Fed. Nat'l Mortgage Ass'n, 174 F.3d 231, 236 (D.C. Cir. 1999) ("Although [the plaintiff] infers retaliatory intent from her supervisors' . . . comments, they . . . do not constitute evidence sufficient to allow a reasonable jury to infer that [the plaintiff's employer's] reasons for [providing the plaintiff with a diminished evaluation] were false."); cf. Forman v. Small, 271 F.3d 294, 301 (D.C. Cir. 2001) (stating that knowledge, without more, will not establish causation for a prima facie case of retaliation);[11] Stevens v. Nat'l

---

[10]    Indeed, while proof of an employer's knowledge at the time of an alleged adverse employment decision may satisfy a plaintiff's burden of establishing a prima facie case under McDonnell Douglas, Holcomb v. Powell, 433 F.3d 889, 903 (D.C. Cir. 2006) ("A plaintiff may satisfy this third element of a prima facie case by showing 'the employer had knowledge of the employee's protected activity, and . . . the adverse personnel action took place shortly after that activity.'"), it does not establish the ultimate issue of retaliation vel non, Jones, 557 F.3d at 677 (stating that retaliation must be established "from all the evidence," including, if applicable, the evidence used to meet the plaintiff's burden of establishing a prima facie case).

[11]    The plaintiff reads Forman as precluding summary judgment in a case where the plaintiff has proffered direct evidence of retaliation.  Pl.'s Opp'n at 15-16.  This position is not entirely accurate.  A

(continued . . . )

R.R. Passenger Corp., 517 F. Supp. 2d 314, 320 (D.D.C. 2007) (analyzing retaliation claim under the District of Columbia Human Rights Act, which parallels and relies upon Title VII caselaw, and expressing doubt that "mere knowledge of [the plaintiff's] prior lawsuit alone suffices as a causal connection").  Indeed, to defeat a motion for summary judgment, the plaintiff must submit proof beyond mere knowledge about protected activity and speculation that one or all of the Board members harbored retaliatory animus against the plaintiff because "[c]onclusory allegations unsupported by factual data [do] not create a triable issue of fact." Exxon Corp. v. F.T.C., 663 F.2d 120, 126-27 (D.C. Cir. 1980) (quotations omitted).

Here, Livingood, a signatory to the 1996 disciplinary memorandum, testified that he considered the fact that the plaintiff was accused of "serious misconduct" in 1996, and that information was "a small factor" in his ultimate decision to approve Stevens' recommendation to terminate the plaintiff's employment.  Pl.'s Stmt., Ex. 2 (Livingood Depo.) at 135-37, 146-47, 206-08; Def.'s Stmt. ¶ 134.  Livingood did not testify that his decision was based, in any degree, on the plaintiff's subsequent grievance activity arising out of the 1996 disciplinary memorandum.

---

( . . . continued)

plaintiff who provides direct evidence of retaliation merely bypasses the McDonnell Douglas burden-shifting test, but does not necessarily prevail on the ultimate issue of retaliation vel non, which requires consideration of all the evidence in the record.  Jones, 557 F.3d at 677 (noting that after "'the burden-shifting framework disappears, . . . a court reviewing summary judgment looks to whether a reasonable jury could infer . . . retaliation from all the evidence,' which includes not only the prima facie case but also the evidence the plaintiff offers to 'attack the employer's proffered explanation for its action' and other evidence of retaliation" (citation omitted)).  While the Court finds that the plaintiff has not provided direct evidence of retaliation for the reasons expressed in this opinion, even if he had, the Circuit in Forman referred to the plaintiff having "met his burden" only with respect to establishing his prima facie case, not his overall burden to establish retaliation vel non.  271 F.3d at 299.  And, the Circuit's reference to the presence of "direct evidence" in that case related solely to evidence that the adverse employment action was taken in response to the employee's filing of a grievance, which went to the question of whether the plaintiff had established a prima facie case of retaliation.  Id. at 300.  Accordingly, regardless of whether the plaintiff had provided direct or circumstantial evidence of retaliation, this Court must still evaluate the ultimate issue: whether a showing of retaliation vel non has been made.  Jones, 557 F.3d at 677.

For example, Livingood did not indicate that he was voting to terminate the plaintiff because the plaintiff contested the 1996 disciplinary memorandum; such evidence would be direct evidence of retaliation.  There is a distinction.  If anything, the facts presented amount to circumstantial or indirect evidence of retaliation.

Illustrating this principle in the context of a retaliation claim brought pursuant to the Civil Service Reform Act ("CSRA"),[12] the District of Columbia Circuit has explained that retaliation is, in laymen's parlance, "any action designed to punish an employee for exercising his protected rights or to deter him from exercising those rights."  Harvey, 802 F.2d at 547.  Specifically, analyzing a factually analogous scenario to the one presented here, the Circuit Court found that a supervisor's negative assessment about an employee, an assessment made despite the supervisor's knowledge that the employee had earlier written a grievance letter against the supervisor, was not actionable as reprisal.  Id.  The Circuit observed:

> Formulating an adverse opinion of an employee, based upon what [the employee] has written and thereby not recommending him for certain jobs, is not the same as taking action against an employee in an attempt to thwart his exercise of his protected rights.  If it were, it would mean that one in an executive position can never exercise his considered judgment in making personnel recommendations when asked to do so when that judgment is based on anything even tangentially related to the exercise of protected conduct.

---

[12]     While agency actions challenged under the CSRA must be reviewed deferentially in favor of the agency, courts have observed that retaliation claims brought under Title VII and the CSRA rely upon the presence or absence of parallel factors of proof.  See Neely v. U.S. Postal Serv., 307 Fed. Appx. 681, 685 (3d Cir. 2009) ("[The plaintiff's] claims of discrimination and retaliation under the Merit Systems principles and the CSRA are meritless for the substantially the same reasons that his related Title VII discrimination and retaliation claims lack merit."); Facha v. Cisneros, 914 F. Supp. 1142, 1148 n.6 (E.D. Pa. 1996) ("The CSRA counterpart to Title VII is 5 U.S.C. § 2302(b)(1), which, in essence, imports the antidiscrimination laws of Title VII into federal employees' workplaces."); see also Warren v. Dep't of Army, 804 F.2d 654, 657 (Fed. Cir. 1986) (analyzing retaliation under the CSRA and drawing from principles of the "comparable law" of Title VII jurisprudence).

Id. at 548 (citation omitted, emphasis added).  Applying this reality to the facts in this case, there

is no legal proscription against Livingood and the other Board members having formulated

unfavorable opinions about the plaintiff in light of the plaintiff's prior treatment of individuals he

supervised.  Similarly, Livingood and the other Board members could permissibly make

employment decisions based on their negative opinions of the plaintiff.  What the Board

members were prohibited from doing was taking any action against the plaintiff either in

response to his grievance activity or that would have frustrated the plaintiff's pursuit of that

activity.  It inures to the Board's defense that there is no evidence of this forbidden category of

behavior in the record.

In the final analysis, given that the Board members have asserted "distinct, valid

managerial reasons" for terminating the plaintiff's employment, Harvey, 802 F.2d at 547, and

knowledge of the plaintiff's appropriate six year old statutorily protected activity can be imputed

solely to Livingood prior to the plaintiff's termination, the Court cannot find that a reasonable

jury could find that the plaintiff demonstrated that his termination was the product of retaliation

or a retaliatory motive by the Board.

**B.      The Board is Entitled to Summary Judgment Because the Plaintiff Has Not Carried
         His Burden of Demonstrating that Retaliation was More Likely than Not**

Whether a plaintiff attempts to prove a case of retaliation by direct evidence or

circumstantial evidence under the McDonnell Douglas framework, the analysis must always

address the ultimate issue of whether it was more likely than not that retaliation was the actual

motive for the employer's actions.  Jones, 557 F.3d at 678 (citing U.S. Postal Serv. Bd. of

Governors v. Aikens, 460 U.S. 711, 716 (1983); Tex. Dep't of Cmty. Affairs v. Burdine, 450

U.S. 248, 256 (1981)) ("At that stage [of the case where all that is left is the ultimate issue of

18

retaliation], the only question is whether the employee's evidence creates a material dispute on the ultimate issue of retaliation 'either directly by [showing] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" (internal citations omitted)); cf. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511-12 & n.4 (1993) (noting in the anti-discrimination context, which mirrors what is required in a retaliation case, that "the plaintiff must show 'both that the reason was false, and that discrimination was the real reason'" when an employer has offered a reason for the action being challenged (emphasis in original, citation omitted)).

Here, the plaintiff has forgone any attempt to rebut the defendant's proffered legitimate, non-retaliatory rationale for its decision, i.e., that the Board's decision was based upon the allegations of managerial misconduct as articulated in Thomas Stevens' memorandum recommending termination of the plaintiff's employment.  See Pl.'s Opp'n at 10.  Obviously then, the plaintiff's position is that rebuttal is unnecessary if the McDonnell Douglas analysis is not applicable.  However, the McDonnell Douglas framework does apply given that the Court has found that there is no direct evidence of retaliation in the record, and the plaintiff can therefore only avoid summary judgment by "either directly . . . [showing] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Jones, 557 F.3d at 678 (citations and internal quotations omitted).  And "if [a plaintiff] is unable to adduce evidence that could allow a reasonable trier of fact to conclude that [defendant's] proffered reason was a pretext for [retaliation], summary judgment must be entered against [the plaintiff]."  Paquin v. Fed. Nat'l Mortgage Ass'n, 119 F.3d 23, 27-28 (D.C. Cir. 1997).  Although the plaintiff has abandoned this legal argument, the Court

19

will nonetheless examine the record to determine whether a case of retaliation vel non can be found to exist based on the evidence in the record.

One of the three Board members, Livingood, a signatory to the 1996 disciplinary memorandum, testified that he considered the fact that the plaintiff was accused of "serious misconduct" in 1996, and that information was "a small factor" in his ultimate decision to approve Stevens' recommendation to terminate the plaintiff's employment.  Pl.'s Stmt., Ex. 2 (Livingood Depo.) at 135, 146-47, 206-08; Def.'s Stmt. ¶ 134.  It is undisputed that the 1996 disciplinary memorandum referenced the plaintiff's March 1996 complaint against his employer, Pl.'s Opp'n at 10, but as a signatory to the memorandum, it must also be assumed that Livingood knew about the memorandum and the plaintiff's March 1996 complaint for six years prior to approving the recommendation to terminate the plaintiff's employment.  Yet, there is no evidence that Livingood conveyed to the other two Board members any information regarding any of the plaintiff's 1996 complaints of discrimination against his employer, Pl.'s Stmt., Ex. 2 (Livingood Depo.) at 206-08; Def.'s Stmt., Hantman Decl. ¶ 8; id. at Pickle Decl. ¶¶ 2-3, 8 (indicating that Board member Pickle assumed his position on the Board in 2003 and "[a]t the time that the Guide Board approved the recommendation to terminate Mr. Barry's employment, [Pickle] was unaware that Mr. Barry had ever filed a complaint with the Office of Compliance"), or that a settlement agreement had been reached in 1997, Pl.'s Stmt., Ex. 2 (Livingood Depo.) at 207-08; see also Pl.'s Opp'n at 10.  There is also no evidence that Livingood himself considered the grievance activity that followed the 1996 disciplinary memorandum.  Therefore, the plaintiff's evidence of the Board's knowledge of his purported statutorily protected activity rests upon the

knowledge of one Board member that the plaintiff had, six years earlier, participated in that activity.

There is also nothing in the record which contradicts the sworn statements of all the Board members that they relied primarily upon Stevens' investigation and termination recommendation, believing that Stevens had conducted a good faith investigation based upon their "every confidence in Mr. Stevens' abilities and professionalism," Pl.'s Stmt., Ex. 2 (Livingood Depo.) at 146-47; see also Def.'s Stmt., Hantman Decl. ¶¶ 3-5; id. at Pickle Decl. ¶¶ 4-6, and would have made the same decision based on Stevens' recommendation alone, Defs.' Stmt`. ¶ 134; id. at Hantman Decl. ¶¶ 6-7; id. at Pickle Decl. ¶¶ 7-8; id. at Livingood Decl. ¶¶ 8-9.  The plaintiff's case is impaired by his failure to offer any evidence that disputes the Board members' representations.  Cf. Carpenter, 174 F.3d at 236 n.3 ("If [a plaintiff] successfully shows that a retaliatory motive played a motivating part in an adverse employment decision [in violation of the District of Columbia Human Rights Act], the employer can nevertheless avoid liability by demonstrating by a preponderance of the evidence that it would still have taken the same action absent retaliatory motive.") (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 252-53 (1989); Berger v. Iron Workers Reinforced Rodmen, Local 201, 170 F.3d 1111, 1125 (D.C. Cir. 1999)).  Although the plaintiff appears to contest the thoroughness of Stevens' investigation, Pl.'s Opp'n at 11 (insinuating that it was not enough for the Board to trust Stevens' "good faith" based solely on its "confidence in [his] abilities and professionalism"), the record contains extensive written statements of the interviews Stevens' conducted, Def.'s Stmt., Declaration of David P. Hauck, Exs. A & B, giving the Court no cause to doubt the unsubstantiated allegations

of the plaintiff that Stevens' conclusions were not supported by evidence and derived from a good faith investigation.

In addition, given that only one of three Board members can be imputed to have known of the plaintiff's statutorily protected activity, and no action was taken for over six years based on this information, the Court cannot make the inferential leap that the employer's conduct "was motivated by personal spite or 'to get even [with the plaintiff],'" or "[was] motivated by a desire to either punish [the plaintiff] for exercising or deterring him from exercising his . . . right" six years prior, Harvey, 802 F.2d at 550, in the absence of any evidence that the plaintiff's employment or pursuit of his statutorily protected activity was in any manner impaired during the intervening six years.

The passage of time between the date when Wilson Livingood would have first learned of the plaintiff's grievance activity, regardless whether it was in late 1996 or early 1997, and when he voted in favor of terminating the plaintiff's employment in 2003, also counters against a finding that a causal relationship exists between the two events.  "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"  Breeden, 532 U.S. at 273 (citation omitted).  Indeed, an adverse employment action taken more than a couple months after an employer's knowledge accrued "suggests, by itself, no causality at all."  Id. at 274.

In summary, on the evidentiary record adduced in this case, the Court cannot find that a reasonable jury could conclude that the Board's rationale for terminating the plaintiff's

employment was false and a pretext for its true retaliatory motive against the plaintiff resulting

from earlier statutorily protected activity.

## IV.  CONCLUSION

For the foregoing reasons, the court concludes that the plaintiff has not carried his

evidentiary burden of showing that a reasonable fact-finder could find that it was more likely

than not that the Board retaliated against him when it terminated his employment.  Accordingly,

the defendant's motion for summary judgment must be granted.[13]

---

[13]     The Court has issued an Order consistent with this Memorandum Opinion.